# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

EDUARDO VASQUEZ,

    Plaintiff,

v.                                              Case No. 5:20-cv-134-TKW/MJF

K. BISHOP, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Eduardo Vasquez, a prisoner proceeding *pro se*, has filed an amended civil rights complaint under 42 U.S.C. § 1983 against six Defendants: (1) Officer Bishop; (2) Warden Colon; (3) Assistant Warden Love; (4) Classification Officer Mendez; (5) Mr. Corrales; and (6) A. Keaton. The undersigned recommends that Vasquez's claims against five of the six Defendants (Colon, Love, Mendez, Corrales, and Keaton) be dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) because Vasquez's amended complaint fails to state a claim upon which relief can be granted.[1]

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

Page 1 of 18

I. **BACKGROUND**

Vasquez commenced this action pursuant to 42 U.S.C. § 1983 against the named Defendants and alleges violations of his Eighth-Amendment rights. (Doc. 1). The undersigned screened Vasquez's complaint, identified several deficiencies, and directed Vasquez to amend his complaint. (Doc. 10). Vasquez submitted his amended complaint, and the operative facts are taken from his amended complaint and are assumed to be true. (Doc. 11).

Vasquez alleges that in June 2019, Defendant Bishop used excessive force on Vasquez during a "shakedown" at the Northwest Florida Reception Center ("NWFRC") visitor's party room. (*Id.* at 6). Bishop purportedly punched Vasquez—who was handcuffed and restrained—in the face and kicked him in the ribs. (*Id.*). Vasquez asserts that he suffered fractured ribs and a fractured nose. He states that these injuries resulted in severe pain.

On August 13, 2019, Vasquez was transferred from the NWFRC to the Wakulla Correctional Institution. (*Id.*). He asserts that he was forced to travel while in extreme pain and that he never received medical treatment for his broken nose and ribs. (*Id.*).

On September 11, 2019, the Florida Department of Corrections ("FDC") transferred Vasquez to the Dade Correctional Institution ("Dade C.I.") to participate in the "T.C.U. program." (*Id.*). On October 11, 2019, while housed at Dade C.I.,

Vasquez filed an informal grievance with Defendant Love. (Doc. 11 at 6). In this grievance, Vasquez stated that he was in fear for his life because Defendant Bishop attacked Vasquez at the NWFRC. This informal grievance stated:

> I am filing this informal grievance because my life are in danger of C/O K. bishop that work over at N.W.F.R.C. main unit. i have inform mental health staff as well as security here at dade C.I. that C/O K bishop assaulted me, set me up with drugs and weapons, and maid sure to tell me before i left N.W.F.R.C. that i'll be back and i do he was going to do more then assault me he was going to kill me. i am not going to take c/o bishop treat lightly or put anything past him. My life are in danger and i need to be place under protective management for the safety of my well being. remedy sought: i be place under protective management from C/O K. bishop.

(Doc. 1 at 5, 13) (typographical and grammatical errors in original).[2] Vasquez asserts that his request for protective management was "disregarded." (Doc. 11 at 6). This grievance was returned as "denied" and—although it is difficult to read the handwriting—the response indicates that the allegations were forwarded to the Inspector General ("I.G.") and the "classification department for protection review." (Doc. 1 at 13). This response was dated October 25, 2019. (*Id.*).

On November 13, 2019, Vasquez filed a formal grievance with Defendant Colon relating to the use of force by Defendant Bishop. (Doc. 11 at 7). This grievance stated:

---

[2] In his amended complaint, Vasquez cites his grievances. Although Vasquez failed to attach the grievances to his amended complaint, he attached the grievances and the responses to his grievances to his original complaint. (Doc. 1).

> This is a formal fear of reprisal grievance by DOC staff members. I filed an informal grievance several weeks ago and I received no response. I am proceeding to the next step as provided for by Chap. 33-103.011(FAC) An Officer Bishop beat me up and kicked me while I was handcuffed and no use of force documentation was ever completed. The incident happened in the shakedown room at the visitors part. I was also written (4) DRs which were false. Officer Bishop broke my nose during the incident, and told me if I ever reported the incident. Classification Officer Mendez was aware of the issue and was part of the informal grievance process. After taking me to confinement, Officer Bishop, stated he'd kill me if I ever reported the incident. I went to Dade C.I. medical staff about my nose being broke. I have finished my TCU here and I am awaiting transfer back to Washington C.I Main Unit. I can't go back there and I am in fear of my life from Officer Bishop.

(Doc. 1 at 6, 14) (typographical, grammatical, and punctuation errors in original).

On November 14, 2019, Defendant Corrales responded that the grievance had been received and reviewed. (*Id.* at 15). Corrales denied the formal grievance after further investigating the nature of Vasquez's grievance. Corrales explained that the response to the informal grievance—*i.e.*, forwarding the grievance to the I.G.'s office and classification department—adequately addressed the issue raised in the informal and formal grievance. (*Id.*).

On November 21, 2019, Vasquez sent a second formal grievance to Dade C.I. Warden, Defendant Colon, which stated:

> This is a formal grievance because the responses attached to the informal grievance (log # 463-1910-0114) (was not received until 11/20/19) is incorrect since the informal grievance was referred to the I.G.'s office and classification department for protection review the grievance should have been approved. Only approved grievances should have been referred to the I.G.'s office as part of the remedy and

> if it was referred to the classification office it should be part of the review for an approve grievance.

(Doc. 1 at 16). On November 26, 2019, Corrales responded that the grievance was returned without action because it was in non-compliance with FDC rules and regulations governing the grievance procedure. (*Id.* at 17).

On December 10, 2019, Vasquez sent a final formal grievance to the Secretary of the FDC. In this grievance, Vasquez claimed that he had filed his formal grievance timely. (*Id.* at 18). On January 3, 2020,[3] Defendant Keaton responded to the grievance and stated that the administrative appeal was being returned without action because it was in non-compliance with FDC rules and regulations relating to the inmate grievance procedure. (*Id.* at 19).

In his complaint, Vasquez asserts that he informed medical staff at the Dade C.I. that he suffered a fractured nose and fractured ribs and that he needed medical treatment. A doctor purportedly informed Vasquez that the doctor could not "do anything about your serious medical condition." (Doc. 11 at 7).

Vasquez asserts that all Defendants were deliberately indifferent to his medical needs, Bishop used "excessive deadly force," and that Defendants Love, Corrales, Keaton, Colon, and Mendez were deliberately indifferent to the excessive force. (*Id.* at 2-3, 7).

---

[3] Although Keaton dated the grievance January 3, "2019," the court presumes this was an error and that the year should have been listed as "2020."

## II. STANDARD

Because Vasquez is a prisoner who is proceeding *in forma pauperis*, the court is required to review his complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Dismissals for failure to state a claim are governed by the Rule 12(b)(6) standard. *See* Fed. R. Civ. P. 12(b)(6); *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Id.*; *see also* 5 C. Wright & A. Miller, Federal

Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (reiterating that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A complaint may also be dismissed for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *see also Marsh v. Butler Cnty.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle).

### III.  DISCUSSION

**A.  CLAIM OF DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED**

The Eighth Amendment prohibits infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that a "prison official's 'deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In other words, because an inmate

"must rely on prison authorities to treat his medical needs," prison officials have an "obligation to provide medical care" for inmates, and failure to meet that obligation can constitute a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 103; *see West v. Atkins*, 487 U.S. 42, 56 (1988) (noting that a state has "an affirmative obligation to provide adequate medical care" to prisoners). But "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Farrow*, 320 F.3d at 1243 (quoting *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted)).

To prevail on an Eighth Amendment claim of deliberate indifference to a serious medical need, a plaintiff must show:

(1) he had a serious medical need;

(2) the defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation.

*Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

Assuming *arguendo* that Vasquez had alleged a serious medical need, he has failed to allege with sufficiency that Defendants acted with deliberate indifference to his serious medical need.

Deliberate indifference is a higher standard than simple negligence and entails three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245 (citing *McElligott*, 182 F.3d at 1255); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013).

Subjective knowledge requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1970); *see Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). The inquiry regarding deliberate indifference is specific as to each defendant, and the court must focus on what each defendant knew. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). In other words, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Id.*

Vasquez's allegations that Defendants had subjective knowledge of the serious risk of harm he purportedly faced are conclusory. Vasquez asserts:

- He told unnamed medical staff at Dade C.I. about his broken ribs and broken nose;

- An unnamed doctor stated that there was nothing the doctor could do for Vasquez's broken nose and ribs; and

- He filed a grievance regarding the excessive use of force incident, which states in part: "Officer Bishop broke my nose during the [excessive use of force] incident. . . . I went to Dade C.I. medical staff about my nose being broke."

(Doc. 1 at 14; Doc. 11 at 7). In his amended complaint, Vasquez concedes that Defendants are not members of the medical staff at Dade C.I. (Doc. 11 at 8, 14). Therefore, the mere fact that Vasquez informed the Dade C.I. medical staff of his serious medical need and his need for medical treatment is insufficient to show that Defendants had subjective knowledge of Vasquez's serious medical need. *Burnette*, 533 F.3d at 1331. This court cannot impute knowledge possessed by Dade C.I. medical personnel to Defendants.

To the extent he relies on his grievances to alert these officials to his serious medical needs, these grievances do not indicate that he was denied medical care for his broken nose or ribs. Additionally, these grievances do not indicate that Vasquez needed medical attention for these conditions. Rather, he merely makes a passing reference to his broken nose as he described the excessive use of force and requested

protective management. (Doc. 1 at 14). The mere passing reference that he had a broken nose and had seen medical staff is simply too conclusory to instill in Defendants subjective knowledge of a serious risk of harm to Plaintiff. *Farmer*, 511 U.S. at 838 (noting that an official's failure to alleviate a significant risk he should have perceived, but did not, does not violate the Eighth Amendment). Accordingly, Plaintiff's Eighth-Amendment claim of deliberate indifference to a serious medical need against Defendants Colon, Love, Mendez, Corrales, and Keaton should be dismissed for failure to state a claim.

**B.    CLAIM OF FAILURE TO PROTECT FROM HARM**

When prison officials "become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (first citing *Hopkins v. Britton*, 742 F.2d 1308, 1310 (11th Cir. 1984); and then *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981)). Prison officials violate the Eighth Amendment when they are deliberately indifferent to a substantial risk of serious harm to inmates. *Doe v. Ga. Dep't of Corr.*, 245 F. App'x 899, 902 (11th Cir. 2007) (citing *Marsh*, 268 F.3d at 1027).

In order to state a claim for failure to protect under the Eighth Amendment, a plaintiff must allege "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Losey v. Warden*, 521 F.

App'x 717, 720 (11th Cir. 2013) (quoting *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)); *accord Mosley v. Zahery*, 966 F.3d 1265, 1267 (11th Cir. 2020) ("[A] prison official violates the Eighth Amendment in this context only when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk.").

### 1. *Substantial Risk of Serious Harm*

For deliberate indifference to exist, a prison official must be aware of a threat that entails a strong likelihood of harm "rather than a mere possibility." *Brown*, 894 F.2d at 1537; *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989).

Vasquez asserts that Bishop used excessive force on him in June 2019 at the NWFRC. (Doc. 11 at 6). In September 2019, the FDC transferred Vasquez to the Dade C.I., and Vasquez remained at the Dade C.I. at least through January 8, 2020. (*Id.*; Doc. 1 at 5, 19 (indicating that as of January 8, 2020, Vasquez was housed at the Dade C.I.)). Bishop, however, apparently remained assigned to work at the NWFRC and was not transferred to the Dade C.I. where Vasquez was imprisoned. (Doc. 1 at 13 (grievance indicating that Bishop was at the NWFRC)). Although Vasquez alleged in his grievances—which are dated from October 2019 through December 2019—that Bishop posed an imminent danger to Vasquez, Vasquez was *not even in the same correctional facility* as Bishop at the time that Vasquez filed those grievances. Thus, Vasquez failed to allege facts sufficient to indicate that he

faced a substantial risk of harm at the time he filed his grievances. Although Vasquez speculated in his grievances that the FDC *might* transfer him back to the NWFRC, Vasquez failed to allege any facts indicating that this was anything more than speculation on Vasquez's part. Accordingly, Vasquez has failed to allege plausibly the existence of a substantial risk of serious harm.

### 2.   *Deliberate Indifference*

Deliberate indifference in the context of a failure to prevent harm has a subjective and an objective component, *i.e*., a plaintiff must show both "that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm" and "that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (citing *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)). An official's failure to alleviate a significant risk he should have perceived, but did not, does not violate the Eighth Amendment. *Farmer*, 511 U.S. at 838; *Brown*, 894 F.2d at 1537 ("Merely negligent failure to protect an inmate from attack does not justify liability under section 1983.").

Even if this court were to assume that Vasquez's grievances provided notice that the FDC may transfer him back to the NWFRC, and that proximity to Bishop posed a substantial risk of harm, there is no indication that Defendants Love, Colon,

Mendez, Corrales, and Keaton acted unreasonably in light of that risk. Assuming that Vasquez's allegations are true, Defendants Love, Colon, Mendez, Corrales, and Keaton knew the following:

- In June 2019, Bishop assaulted Vasquez while he was incarcerated at the NWFRC;

- On an unspecified date, Bishop threatened Vasquez and told Vasquez not to come back to the NWFRC;

- On August 13, 2019, the FDC transferred Vasquez from the NWFRC to the Wakulla Correctional Institution, while Bishop remained employed at the NWFRC;

- On September 11, 2019, the FDC transferred Vasquez to the Dade C.I., while Bishop remained employed at the NWFRC;

- On October 11, 2019—while Vasquez was incarcerated at the Dade C.I. and Bishop remained at the NWFRC—Vasquez filed an informal grievance about Bishop's alleged attack and asked for protective management;

- After reviewing Plaintiff's informal grievance, prison staff forwarded the allegations to the I.G. and the classification department for protective management review; and

- Vasquez remained at the Dade C.I. at least through January 2020.

With only this knowledge, it was reasonable for Defendants Love, Colon, Mendez, Corrales, and Keaton to submit Vasquez's allegations of excessive force to the appropriate authorities (the I.G.'s office and the classification department) for an investigation/review and a determination of whether the FDC should place Vasquez in protective management. *See Mosley*, 966 F.3d at 1271-72 (noting that under certain circumstances based on the knowledge the officials have, it is not unreasonable for an official to investigate threats and look into his or her options). In fact, the FDC already had removed Vasquez from the NWFRC—and thereby ensured that Bishop would not have ready access to Vasquez. Vasquez was kept away from Bishop from at least September 2019 through at least January 2020 while the I.G.'s office and the classification department reviewed Vasquez's protective management request. While it does appear that Vasquez's request was denied insofar as Vasquez was ultimately transferred back to the NWRFC, there are no allegations that these Defendants were members of the classification team that decided whether Vasquez should or should not be placed in protective management.

Vasquez also did not allege facts indicating that Defendants Love, Colon, Mendez, Corrales, and Keaton acted with deliberate indifference to the alleged risk of serious harm that Bishop purportedly posed. Among other things, Vasquez failed to allege that Love, Colon, Mendez, Corrales, and Keaton possessed subjective knowledge that: (1) the FDC likely would transfer Vasquez back to the NWFRC; (2)

that Bishop also would still be working at the NWFRC whenever the FDC transferred Vasquez back there; and (3) that Bishop would have access to Vasquez once the FDC transferred Vasquez back to the NWFRC. Similarly, Vasquez failed to allege facts indicating: (1) when each Defendant allegedly gained this subjective knowledge; and (2) how each Defendant gained this subjective knowledge.

In light of the foregoing, Vasquez failed to allege that Defendants Love, Colon, Mendez, Corrales, and Keaton acted with deliberate indifference.

### 3. *Causation*

Section 1983 also requires a plaintiff to allege "an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." *LeMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (quoting *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982)).

In this case, as noted above, Plaintiff alleges that, around August 2019, the FDC moved Vasquez from the NWFRC—where Bishop apparently remained employed. This transfer occurred before Defendants allegedly were deliberately indifferent to the risk of Bishop again harming Vasquez. Vasquez fails to allege that once the FDC moved him from the NWFRC, Bishop or anyone else harmed him. Although it appears that the FDC transferred Vasquez back to the NWFRC sometime after January 2020, Vasquez has not alleged that he suffered any harm at the NWFRC after his return. Thus, he has not alleged that his return to the NWFRC

caused him harm. He also has not alleged that the FDC's decision to return Vasquez to the NWFRC was the result of Defendants' response to Vasquez's grievances. As noted above, Vasquez had not alleged that Defendants were members of the classification team that determined whether Vasquez was entitled to protective management. Vasquez also has not alleged that Defendants made the decision to transfer him back to the NWFRC. Accordingly, he has not alleged the causation element with respect to a failure to protect claim against Love, Colon, Mendez, Corrales, and Keaton.

## IV.   CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Plaintiff's claims against Defendants Colon, Love, Mendez, Corrales, and Keaton be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim.

2. This case be recommitted to the undersigned to address Plaintiff's remaining claims against Defendant Bishop.

At Panama City Beach, Florida this 24th day of November, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**